UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| YOLANDA U. CHILDRESS,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant*. | No. 1:21-cv-00124 |

## MEMORANDUM AND ORDER

Plaintiff Yolanda Childress ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Doc. 23 & Doc. 26] and filed supporting briefs [Doc. 24 & Doc. 27]. For the reasons stated below: (1) Plaintiff's motion for judgment on the administrative record [Doc. 23] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 26] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

I.  ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 14 ("Tr.")], Plaintiff filed her applications for DIB and SSI on October 16, 2018, alleging disability beginning December 11, 2015. Plaintiff later amended her alleged onset of disability date to November 21, 2017. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held telephonically on July 6, 2020. On July 21,

2020, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time from the amended alleged onset of disability date through the date of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born May 8, 1975, making her 42 years old on the amended alleged onset date, which is considered a "younger person." 20 C.F.R. §§ 404.1563(c) & 416.963(c). She has at least high school education and is able to communicate in English. She has past relevant work as direct support staff and as a poultry worker.

### B. Medical Records

In her December 2018 Disability Report, Plaintiff alleged disability due to low vision or blindness, "cervical nerve root disorder," right upper limb pain, and "compression injury of spinal cord in neck." (Tr. 210). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the telephonic hearing before the ALJ on July 6, 2020, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 31-45).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs

the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through June 30, 2018. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her amended alleged onset of disability date, November 21, 2017. At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disease of the cervical spine with spondylosis; (2) cervical radiculopathy; and (3) cervical spondylosis. The ALJ also noted Plaintiff had medically determinable impairments of hypertension, astigmatism with myopia, and anxiety/panic disorder, but the ALJ found these impairments were non-severe.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), with the following additional restrictions:

- She is limited to simple, routine, repetitive tasks because of pain.
- She cannot climb ladders, ropes, or scaffolds.
- She cannot work around unprotected heights or dangerous machinery.
- She cannot perform any overhead work with the right, dominant arm.
- She is limited to frequent (up to 2/3 of the workday) fine/gross manipulation, handling, grasping, pushing, and pulling of objects with the right dominant hand.

(Tr. 20).

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as she actually performed it or as it is generally performed in the national economy. At step five, however, the ALJ found there were occupations with jobs existing in significant numbers in the national economy available to a person with Plaintiff's RFC, including: laundry folder (397,000 jobs available) and electronics assembler (41,000 jobs available), which are both considered unskilled occupations performed at the light exertional level; and final assembler (40,000 jobs available) and table worker (20,000 jobs available), which are both considered unskilled occupations performed at the sedentary exertional level.

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the amended alleged onset date of November 21, 2017, and the date of the decision, July 21, 2020 (Tr. 25).

IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings, "including but not limited to a *de novo* hearing and a new decision." [Doc. 24 at Page ID # 779]. She contends the "ALJ failed to include work related limitations in his RFC consistent with the opinion of consultative examiner Dr. Goewey, which [the ALJ] purported to find 'persuasive.'" [*Id.* at Page ID # 770].

A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek*

5

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No.

6

1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

## B. The ALJ's Assessment of Dr. Goewey's Opinion

To assess a claimant's RFC, ALJs are required to consider all of the relevant evidence in a claimant's record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Plaintiff's medical record includes opinions from state agency non-examining medical consultants, and from one-time consultative physical examiner Stephen Goewey, M.D. The ALJ described Dr. Goewey's opinion and then explained his consideration of the opinion as follows:

> Stephen Goewey, M.D. examined the claimant during a consultative physical examination on April 18, 2019. Physical examination revealed cervical spine flexion 35 degrees, extension 25 degrees, right lateral flexion 30 degrees, left lateral flexion 25 degrees, right rotation 55 degrees, and left rotation 50 degrees. Dorsolumbar spine flexion is 30 degrees, extension 20 degrees, side bending 20 degrees, and negative straight leg raising test. The claimant's shoulder forward flexion and abduction is to 70 degrees on right with extension of 10 degrees. The claimant had full range of motion on her left shoulders. The claimant had full range of motion on her elbows, forearm, wrist as well as hands and finger evaluation. Right hip flexion 30 degrees, left hip flexion 35 degrees and remaining hip evaluation was full, range of motion on her knees as well as feet and ankle evaluation. Cranial nerves II through XII were grossly intact. Motor strength was 4/5 in the right upper extremity, otherwise 5/5. The claimant had full sensation. Deep tendon reflexes were full. Romberg testing was negative. Evaluation revealed nonantalgic gait. Dr. Goewey noted the following assessment: cervicalgia with radiculopathy and astigmatism with myopia, alleged retinal tear without supportive documentation. He opined that the claimant would be able to sit between 3 and 4 hours daily; stand and walk at least 3 to 4 hours daily; lift and carry at least 10 to 20 pounds with overhead activity restricted on the right; and non-continuous grasping, pulling, pushing, as well as fine manipulation on the right (Exhibit 4F). I

7

> find his opinion to be persuasive, as his findings are consistent with and supported by the examination results. Given the totality of the medical evidence, and in consideration of Dr. Goewey's findings, I find the claimant could perform light work, except she is limited to simple, routine, repetitive tasks due to pain; no climbing of ladders, ropes, and scaffolds; no work around unprotected heights and dangerous machinery; no overhead work with the right, dominant arm; and is limited to frequent (defined as up to 2/3 of the workday) fine/gross manipulation, handling, grasping, grabbing, pushing, and pulling of objects with the right dominant hand.

(Tr. 23).

Plaintiff argues the ALJ erred in his consideration of Dr. Goewey's opinion because, "despite the credibility the ALJ placed in the opinion, absent from the RFC were Dr. Goewey's opined limitations in sitting, which he opined Plaintiff could do between three and four hours per day." [Doc. 24 at Page ID # 776-77]. Plaintiff contends the ALJ failed to explain why he did not incorporate the sitting limitations thereby "creating the impression that the ALJ simply ignored the limitation because it conflicted with the narrative that Plaintiff was capable of light work." [*Id.* at Page ID # 778]. According to Plaintiff, the error is not harmless because Dr. Goewey's sitting limitation would have precluded "even sedentary work, let alone the light work the ALJ found Plaintiff could perform." [*Id.* at Page ID # 777].

In response, the Commissioner points out that an inability to sit for prolonged periods of time does not rule out light work, even if it does preclude sedentary work. As such, any error is harmless because the ALJ identified light work occupations available to a person with Plaintiff's RFC. Moreover, the Commissioner argues, the ALJ is not required to fully credit the opinion of any provider, and the ALJ's RFC assessment here is supported not only by Dr. Goewey's opinion, but also by the opinions of the state agency non-examining consultants and by the ALJ's analysis of Plaintiff's subjectively reported symptoms, which Plaintiff does not address or challenge.

8

The regulations define light work as involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b). Social Security Ruling ("SSR") 83-10 gives examples of skilled and semi-skilled light work occupations performed in a mostly seated position (mattress sewing machine operator, motor-grader operator, and road-roller operator), but explains that "[r]elatively few unskilled light jobs are performed in a seated position." 1993 WL 31251 (SSA Jan. 1, 1983).

Accordingly, in this case, the Commissioner is correct in arguing that, generally speaking, Plaintiff would still be capable of performing the requirements of light, unskilled work, even if she is limited to three or four hours of sitting daily. However, some light work jobs involve "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

The VE testified there were 397,000 laundry folder jobs available in the national economy and 41,000 electronics assembler jobs available in the national economy. Plaintiff does not challenge the accuracy of the VE's testimony as offered, only that the ALJ wrongfully rejected the sitting limitations opined to by Dr. Goewey. The Dictionary of Occupational Titles ("DOT")[1],

---

[1] The DOT is available online at: https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT.

describes the laundry folder occupation (DOT # 369.687-018) as:

> Folds fluff-dried or pressed laundry, such as shirts, towels, uniforms, and jackets: Shakes out, smooths, folds, sorts, and stacks wash according to identification tags. Inspects pressed laundry for holes or tears, and separates defective articles for transfer to repair department. Folds laundry, preparatory to wrapping, for delivery to customer. Folds pressed shirts around cardboard forms and inserts assembly in plastic bags. May attach missing buttons to articles, using button-sewing-machine or button-attaching machine. May unload tumbler. May turn socks, match pairs, and tie socks into bundles. May be designated according to type of laundry folded as Shirt Folder (laundry & rel.) I; Wearing-Apparel Folder (laundry & rel.).

The electronics assembler occupation (DOT # 726.687-010) is described as:

> Performs any combination of [the] following tasks to clean, trim, or prepare components or parts for assembly by other workers: Receives verbal or written instructions from supervisor regarding work assignment. Cleans and deglosses parts, using cleaning devices, solutions, and abrasives. Trims flash from molded or cast parts, using cutting tool or file. Applies primers, plastics, adhesives, and other coatings to designated surfaces, using applicators, such as spray guns, brushes, or rollers. Fills shells, caps, cases, and other cavities with plastic encapsulating fluid or dips parts in fluid to protect, coat, and seal parts. Prepares wires for assembly by measuring, cutting, stripping, twisting, tinning, and attaching contacts, lugs, and other terminal devices, using handtools, and power tools and equipment. Positions and fastens together parts, such as laminates, electron tube mounts and cages, variable capacitor rotors and stators, paper loudspeaker cones, faceplates, and shells and cases for various electronic components, using handtools and power tools. Prints identifying information on components and parts, using silk screen, transfer press, or electro-etch printing devices, or ink pad and stamp. [M]oves parts and finished components to designated areas of plant, such as assembly, shipping and receiving, or storage. Loads and unloads parts from ovens, baskets, pallets, and racks. Disassembles and reclaims parts, using heating equipment and handtools.

Nothing about the DOT descriptions of the laundry folder and electronics assembler jobs indicates these jobs are considered the "relatively few" unskilled light occupations that require

10

prolonged seating, and Plaintiff does not argue otherwise. *See, e.g.*, *Pearce v. Astrue*, No. C09-04MJP, 2009 WL 3698514, at *3 (W.D. Wash. Nov. 3, 2009) ("The 'light work' entailed in the laundry folder position requires the ability to stand or walk for six hours in an eight-hour work day with intermittent sitting during the remaining time."). Thus, even if the ALJ had adopted the Dr. Goewey's sitting limitations, which would eliminate the sedentary occupations, there would still be a substantial number of jobs available to plaintiff. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'" (citing cases)). Furthermore, "the limitation to light work implicitly includes a finding that the plaintiff could stand or walk off and on for a total of approximately six hours of an eight-hour workday," leaving two hours required for sitting. *Conner v. Kijakazi*, No. 3:21-cv-00022, 2022 WL 873682, at *8 (S.D.W.V. Mar. 7, 2022) (citation omitted), *adopted*, 2022 WL 866271 (S.D.W.V. Mar. 22, 2022).

Moreover, as the Commissioner argues, even though the ALJ found Dr. Goewey's opinion "persuasive," the ALJ was not required to "incorporate the entirety of [his] opinion," especially not the aspects of the opinion that the ALJ found were not supported by substantial evidence. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Although the ALJ did not detail the specific reasons why he did not adopt Dr. Goewey's sitting restrictions, the ALJ's discussion of the evidence in the record renders his unfavorable decision sufficiently reviewable and provides the requisite substantial evidence to support his decision.

For example, the ALJ found the opinions of the state agency consultants "partially persuasive," concluding that the record supported greater limitations than reflected in their opinions (Tr. 22). As the ALJ explained, they found Plaintiff could perform light work, except she could occasionally push and pull with her right shoulder, occasionally climb ladders, ropes,

11

and scaffolds, with no mental limitations and no limitations in the use of her right hand (Tr. 22). The ALJ adopted greater limitations in each of these areas except for sitting, standing/walking, and lifting/carrying. It is therefore clear the ALJ was persuaded by their opinions that Plaintiff could perform the general requirements of "light work" (i.e., standing/walking, sitting, and lifting requirements) but not the full extent of the postural and manipulative functions opined to by the state agency consultants.

The ALJ also discussed other evidence which reveals his reasoning for finding Plaintiff capable of the standing/walking, sitting, and lifting/carrying requirements of light work. He discussed Plaintiff's medical records, including how, in January 2019, Plaintiff reported that she was "very happy with the results from physical therapy" on her cervical and lumbar spine areas, and that she had "no further complaints." (Tr. 22, 316). The provider recommended "continuing with conservative management in the form of further physical therapy" instead of moving forward with surgery (Tr. 319). In April 2019, as the ALJ acknowledged, Plaintiff was involved in a car accident, but once again she experienced improvement with conservative treatment (Tr. 22 ("The claimant stated that she has [had] a significant decrease in pain since last session," and that she has a "3-4/10 pain.")). An x-ray of her lumbar spine around that time "revealed normal alignment" (Tr. 22). As the ALJ noted, Plaintiff "reported that physical therapy had improved her symptoms." (Tr. 22). Furthermore, the ALJ noted that in February 2020, Plaintiff's mental status had improved from the previous year, with her provider observing that her anxiety "appears to be controlled with lifestyle modification" (Tr. 18).

Finally, the ALJ found Plaintiff's subjective statements concerning the intensity and limiting effects of her symptoms were not entirely consistent with the record. In addition to the medical evidence addressed above, including the medical opinion evidence, the ALJ also discussed

12

how Plaintiff was "frequently absent from therapy for weeks at a time," despite the fact that she typically experienced relief when she was adhering to a physical therapy schedule (Tr. 21-22), and how she "takes no medication to treat her alleged symptoms." (Tr. 22). At step three, the ALJ noted Plaintiff was "able to recall her medical history, social history, and relay information to her doctors and other examiners without difficulty," in addition to being able to pay bills, count change, use a savings account, and use a checkbook (Tr. 18). In consideration of her activities of daily living, the ALJ noted Plaintiff "prepares simple meals and [does] household chores," in addition to reading and watching television (Tr. 18). The ALJ also observed Plaintiff "goes to appointments and out to eat with friends and family twice a week." (Tr. 19).

Plaintiff does not directly challenge the ALJ's assessment of her reported symptoms and complaints, and the Court finds the ALJ properly evaluated them consistent with relevant SSA policies and regulations, including SSR 16-3p, 2017 WL 5180304 (SSA Oct. 25, 2017), and 20 C.F.R. § 404.1529. Such evaluations are properly entrusted to the ALJ. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted).

Plaintiff's citation to the unpublished, nonbinding decision in *Blackmon v. Commissioner of Social Security*, No. 4:20-CV-01196, JDG, 2021 WL 2744656 (N.D. Ohio July 1, 2021) is unavailing. In that case, both of the medical opinions in the record reflected mental limitations which the ALJ declined to include in the RFC without providing an explanation. In this case, as explained above, the ALJ's decision reflects that he credited the state agency non-examining consultants regarding Plaintiff's ability to perform the basic requirements of light work.

Plaintiff also cites *Craft v. Commissioner of Social Security*, No. 1:12-CV-487, 2012 WL 6812537 (N.D. Ohio Dec. 17, 2012), another unpublished, non-binding case. In *Craft*, the court

13

held that the ALJ in that case erred when he gave "significant weight" to a consultative examiner's opinion but then "disregarded portions of the doctor's findings." *Id.* at *5. The court reasoned, as Plaintiff notes, that an ALJ may not "pick and [choose] the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision." *Id.* (quoting *Young v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 644, 649 (E.D.Mich. 2004)). In that case, the ALJ "disregarded" the consultative examiner's opinion that the claimant had marked limitations in the areas of "adaptability and insight and judgment." *Id.* at *4. The court noted that given the occupations the ALJ relied on at step five in that case, the claimant's "ability to adapt and his insight and judgment were particularly relevant to the ALJ's assessment of his ability to work." *Id.* (further noting that although the claimant's "level of adaptability and insight and judgment may not have been critical to determining whether his impairments met or equaled listing level, these factors were significant in evaluating his RFC"). As discussed above, and contrary to *Craft*, Plaintiff does not argue that prolonged sitting is an essential requirement for either of the light work occupations the ALJ relied on at step five in this case.

Plaintiff argues the ALJ's hypothetical to the VE at the administrative hearing was incomplete, rendering the ALJ's step five determination without substantial support. However, the ALJ is only required to incorporate the limitations he finds credible into his hypothetical to the VE and in the RFC. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citation omitted). As explained above, the Court finds the ALJ did not commit harmful error in not including the sitting limitation opined to by Dr. Goewey.

In sum, the Court concludes the ALJ considered all of the limitations opined to by Dr. Goewey and incorporated those he found to be accurate and credible into Plaintiff's RFC, rejecting those that did not align with the state agency non-examining consultants and the other medical

14

evidence in the record, such as Plaintiff's improvement with conservative treatment. The Court also concludes Plaintiff has failed to show the ALJ "cherry-picked select portions" of Dr. Goewey's opinion or the record. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723-24 (6th Cir. 2014) (finding error where the ALJ failed to address "portions of the record, including the evidence of a continuing illness that was not resolved despite use of increasingly serious and dangerous medications"). The ALJ's articulation is sufficient to allow the Court to review the ALJ's evaluation of Dr. Goewey's opinion and to determine that the ALJ's decision is supported by substantial evidence. The decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted).

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported his conclusion and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. While Plaintiff cites to certain evidence in the record that supports her position, that is insufficient given the standard of review. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted).

15

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's motion for summary judgment [Doc. 23] is **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 26] is **GRANTED**; and

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE